IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDRES AGUILAR,

   Plaintiff,

v.

SECURITY OFFICER, *et al.*,

   Defendants.

Civil Action No.: MJM-23-201

## MEMORANDUM OPINION

In response to the above-captioned civil rights lawsuit, Defendants filed a motion to dismiss, or in the alternative, for summary judgment. ECF No. 12.[1] Self-represented plaintiff Andres Aguilar was advised of his opportunity to oppose the motion (ECF No. 13) but has not filed anything further. No hearing is required to resolve the matters pending before the Court. *See* L. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendants' motion shall be granted.

## BACKGROUND

At all times relevant to the Amended Complaint, Aguilar was confined to Clifton T. Perkins Hospital Center ("Perkins") for determination of whether he was competent to stand trial in the Circuit Court for Prince George's County, Maryland, where he was charged with first degree murder and related counts. ECF No. 12-2, ¶ 4. Perkins is a forensic psychiatric hospital operated by the Maryland Department of Health. On March 9, 2023, Aguilar was found competent to stand trial, and he was thereafter released from Perkins and transferred to Prince George's County Detention Center. ECF No. 19.

---

[1] Pursuant to the Court's directive (ECF No. 14), a redacted version of the Memorandum in support of Defendants' Motion was filed at ECF No. 15. Defendants have withdrawn their motion to seal the court records filed at ECF No. 12-7. ECF No. 16. As such, ECF No. 12-7 shall remain unsealed. Defendants' motion to seal shall be granted in other respects, for reasons explained in the Court's Memorandum dated May 16, 2023. ECF No. 14.

Aguilar claims that, on January 4, 2023, while at Perkins, he was assaulted by staff, given an unknown medication, denied bathroom privileges for two hours, and otherwise maltreated. ECF No. 3 at 2–3. Perkins has an administrative process for "receiving, investigating, and resolving resident complaints, including rights issues, in a timey manner" which is referred to as the Resident Grievance System. Md. Code Regs. 10.21.14.01, *et seq*. Aguilar filed a grievance regarding events that transpired on January 4, 2023, alleging that he was slammed into the ground by security, punched in the face, and hit in the back of the head. ECF No. 12-2, ¶ 6 (Moran Aff.); ECF No. 12-5 (Stage 4 Decision Central Review Committee).  He also alleged that he did not know what medication he was offered and that the arm restraints applied to him pulled his arms too far back, causing him pain. ECF No. 12-2, ¶ 6

Rights Advisor David O'Neil reviewed Aguilar's grievance on January 25, 2023.  ECF No. 12-2, ¶ 7; ECF No. 12-5. After reviewing video of the incident, O'Neil determined that Aguilar had not been physically abused by staff as alleged.  *Id*.  Shortly thereafter, Unit Director Lesha Hall conducted a Stage 2 review of Aguilar's grievance. ECF No. 12-2, ¶ 8; ECF No. 12-5. She also reviewed the video and determined that Aguilar's complaint was not valid. ECF No. 12-2, ¶ 8. On February 3, 2023, Dr. Scott Moran, CEO of Perkins, conducted a Stage 3B grievance review and found the complaint invalid after he reviewed the materials, video, and documents. *Id*. ¶ 9. Dr. Moran found that Aguilar attempted to interfere with officers while they were in the process of restraining another patient. Dr. Moran determined there was no indication of abuse or maltreatment when Aguilar was brought to the ground, or when he was restrained on the bed..  *Id.*; ECF No. 12-6 (Stage 3B Decision).

On February 17, 2023, the Central Review Committee ("CRC") conducted the final review of Aguilar's grievance and found it invalid. ECF No. 12-5. The CRC reviewed the investigation

2

report prepared by Mr. O'Neal, which included the patient's statement, a witness statement, and review of the video during the time of the restraint, as well as reports prepared by the Unit Director and the facility's CEO. *Id*. The CRC found the video footage did not show physical abuse during the restraint. ECF No. 12-2, ¶ 10; ECF No. 12-5. Instead, the video showed that Aguilar was combative and attempted to interfere with security officers while they were restraining another patient. *Id.* Specifically, the report recounts as follows:

> The video revealed that [Aguilar] was in the hall watching while staff were dealing with another crisis. [Aguilar] had words with the officers and then began to assault one of the officers. The officers responded by blocking the assault and taking [Aguilar] to the ground. It did not appear as though [Aguilar] was slammed or hurt. The officers maintained a four-point hold on [Aguilar] while [he] was being highly combative.

ECF No. 12-5 at 1–2. Aguilar was medicated as a result of his assault on the officers. *Id*. at 2. Additionally, a physician ordered that physical restraints be applied to Aguilar because he posed a threat to others. ECF No. 12-8.

Maryland Department of Health reported that Aguilar was competent to stand trial on October 7, 2022. ECF No. 12-4 (Competency Evaluation).

Defendants contend that the force used against Aguilar complied with state law and Perkins's policy permitting restraints on a patient who poses a serious and imminent danger. ECF No. 12. They assert that Aguilar assaulted staff and remained combative even after he was restrained. They also argue that the Complaint fails to state a Fourteenth Amendment claim. In the event this Court finds that Aguilar has stated a constitutional claim, Defendants assert that they are entitled to qualified immunity because they did not violate a clearly established right.

## STANDARD OF REVIEW

Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or that summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56.

ECF No. 12.  Motions styled in this manner implicate a court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty*., 788 F. Supp. 2d 431, 436–37 (D. Md. 2011).  Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 260–61 (4th Cir. 1998).  When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.  Because Defendants styled their motion as a motion to dismiss, or in the alternative, for summary judgment, Aguilar was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.  Accordingly, the Court will review Aguilar's claims against Defendants under the Rule 56(a) standard and will consider the exhibits filed in support of Defendants' motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am*., 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original).  A court

4

must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568–69 (4th Cir. 2015).  At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful that Aguilar is a self-represented litigant.  A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  And a court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## ANALYSIS

**A.     Immunity**

Under the Eleventh Amendment to the United States Constitution, a state and its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself.  *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).  The State of Maryland has not waived such immunity for claims brought pursuant to § 1983.  To the extent that Aguilar sues Defendants in their official capacities, the claims must be dismissed.

B.   **Fourteenth Amendment**

Aguilar was an involuntarily committed patient in the custody of the Maryland Department of Health at the time of this incident. The due process clause of the Fourteenth Amendment requires the State to provide involuntarily committed patients with such services as are necessary to ensure "reasonable safety" for themselves and others. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). Under *Youngberg*, the State "may not restrain residents except when and to the extent professional judgment deems this necessary to assure such safety or to provide needed training." *Id*. The State must "provide adequate safe conditions, reasonable freedom from bodily restraint, and 'minimally adequate or reasonable training to ensure safety and freedom from undue restraint.'" *Williams v. Wasserman*, 937 F. Supp. 526 (D. Md. 1996) (quoting *Youngberg*, 457 U.S. at 319).

In determining whether a substantive right protected by the due process clause has been violated, the Court must balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 319 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961)). The Court applies the "professional judgment" standard, in which "the Constitution only requires that the Court make certain that professional judgment in fact was exercised." *Id*. at 321. Decisions made by professionals are presumptively valid and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 323. In applying this standard, the Fourth Circuit has held that a defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten v. Nichols*, 274 F.3d 829, 843 (4th Cir. 2001). In balancing the legitimate interests of the State with the rights of

6

involuntarily committed patients, "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017) (quoting *Youngberg*, 457 U.S. at 321).

The record evidence demonstrates that Aguilar intervened in the duties of security staff who were actively securing another detainee. He assaulted staff and remained agitated even after he was restrained. Aguilar's conduct created a risk of harm to both staff and other patients. A physician ordered that physical restraints be applied. Under applicable regulations, restraints may be applied to a patient when a physician or a registered nurse determines that the restraints are appropriate by assessing whether there is an emergency situation; or the "degree to which the patient presents a serious disruption to the therapeutic environment." Md. Code Regs. 10.21.12.05.A. The uncontroverted evidence demonstrates that Aguilar met this criteria. The fact that he presented a serious disruption to the therapeutic environment is apparent from the description of the events provided in Defendants' exhibits. Defendants are entitled to summary judgment as the uncontroverted evidence demonstrates that the initial takedown of Aguilar and the subsequent medical and physical restraint of him were necessary under the circumstances.[2] The facts do not support a finding that Defendants departed from the exercise of professional judgment.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, IS GRANTED. A separate Order follows.

|   |   |
|---|---|
| __2/22/24__ | __/S/__ |
| Date | Matthew J. Maddox |
|  | United States District Judge |

---

[2] Because we grant the Defendants' motion for summary judgment, we need not address Defendants' additional defenses.